Fuchsberg, J.
(dissenting). Standing alone, the record here, featuring the People’s use of 8 of its 11 exercised peremptory challenges to excuse all of the 7 blacks and the lone Hispanic drawn from the venire, on its face presented a classical picture of intentional and systematic exclusion on account of race, creed, color or national origin. As such, without more and absent any countervailing explanation, I agree with my fellow dissenters that it ran counter to the *557 defendant’s constitutional right* to be tried by a jury drawn from a randomly selected, representative cross section of the community. True, attempts to pursue the cross section ideal are commonly, and most efficiently, managed in the formation of the jury pool from which the venire is drawn rather than at the picking of the petit jury. This does not mean, however, that its purposeful frustration at the latter stage is to be countenanced. Since, at the very least then, the trial court should have granted defendant’s motion for a hearing, I agree there indeed should be a reversal and a new trial.
I also firmly believe that guidelines to aid in the determination of the existence of purposeful and systematic discrimination, the finding of which will so heavily depend upon a trial court’s personal observations, would best be developed by “the step-by-step and case-by-case evolution characteristic of the common law” (People v Andre W., 44 NY2d 179, 185).
So I cannot accept my fellow dissenters’ assumption that whatever procedure might be adopted to investigate discrimination in this context should include an obligation that a prosecutor or other counsel so charged with exercising peremptories explain, whether by argument or testimony, the grounds for the challenges. This may be better understood against some comment on the nature and essentiality of the function of the peremptory challenge.
Having evolved over the centuries as a unique and effective key to securing an impartial jury while assuring litigants and the public of its fairness, the peremptory challenge is not to be underestimated. In large part this is because the challenge for cause (CPL 270.20), fashioned essentially to eradicate the smaller incidence of patent prejudice rather than the far greater one of latent prejudice, cannot hope, by itself, to provide full protection from partiality (cf. People v Provenzano, 50 NY2d 420). Surely, absent impartiality, the petit jury would lack a jurisprudential ingredient on a par with cross-sectionalism.
For impartiality cannot be taken for granted. It would be naive in the extreme to entertain the notion, shared per *558 haps by philosophers without experience, that jurors, unlike other persons, do not bring with them the biases produced by their respective environments, education, group affiliations, occupational experiences and the like. Moreover, many prospective jurors report for service with predispositions or misconceptions, often subconscious or not well thought out, concerning certain types of cases or litigants. Since self-appraisal may be too subjective for appreciation of one’s underlying prejudice, self-esteem too blinding for acknowledgement of an inability to overcome it and self-confession too embarrassing to be made in public, as often as not voir dire, even when not too circumscribed, will not disclose bias sufficiently to support a challenge for cause (Saltzburg & Powers, Peremptory Challenges and the Clash Between Impartiality and Group Representation, 41 Md L Rev 337, 355; Suggs & Sales, Juror Self-Disclosure in the Voir Dire: A Social Science Analysis, 56 Ind LJ 245; Babcock, Voir Dire: Preserving “Its Wonderful Power”, 27 Stan L Rev 545, 554).
The peremptory challenge fills this gap. While, in the vernacular, we often say that a lawyer is to “select a jury”, this function, realistically regarded, more accurately may be seen as one to “unselect a jury”. After all, operating under our adversary system, with rare exceptions, the aim of each advocate is to eliminate those jurors least likely, in the circumstances of the case at hand, to favor the position of his or her client. In short, subject to errors of judgment, targeted are the extremes of partiality, in principle a most valuable purpose.
Historically and today, to give the peremptory challenge the full sway it needs to do its job, “no reason need be assigned” for its use (CPL 270.25). Taking the statute at its word, not only need no reason be articulated, but none need exist and, when it does, any reason, save when it bespeaks systematic and intentional exclusion of the unmistakable kind we encounter in this case, should do. This includes anything which motivates human conduct, ranging all the way from intuition, courtroom nuances, the set of a face and a willingness to gamble on a replacement to a calculated judgment of what effect a particular juror’s background and personality is likely to have in appraising the facts and personalities on which a verdict will turn. For *559 instance, should one quarrel with the right of counsel to strike a juror whose youthful idealism may produce a touch of hardness, or the corresponding right of the adversary to eliminate an older person whose mellowness he senses will have brought a forgiving approach? Or with the right, while representing a female client, to excuse a taleswoman because of a belief that women can be each others’ severest critics? Or, too, depending on the case committed to counsel’s trust, in preferring the perceived openhandedness of a salesman or freewheeling executive over the precision of a toolmaker or the caution of a loan officer, as the case may be? Or, even because one is rich and the other poor? Or, sensitive to the realities of life in a pluralistic society, to legitimately consider any and all of a venireperson’s varied socioeconomic striations and the attitudinal effect these may have wrought? Or, knowing too little about the individual jurors, because the lawyer makes one of these sensitive decisions on a stereotypical basis? Centuries of experience say the answer is no.
All this is mind, in order to correct occasional lapses into purposeful discrimination as such, it would be most unfortunate to adopt a procedural norm which would require every trial advocate to not only search his or her soul and subconscious but, figuratively, to look over his or her shoulder before challenging a prospective juror who shares a “common characteristic” with the opposing party or with another juror whom the attorney has already excused. Though the rejection by counsel of an invitation lo explain a seemingly discriminatory challenge, of course, may make far less likely a finding that it in fact was not discriminatorily motivated, the letter and spirit of the legislative provision that “no reason need be assigned” should be respected.
This said, I would reverse and order a new trial.
Chief Judge Cooke and Judges Jasen and Wachtler concur with Judge Gabrielli; Chief Judge Cooke concurs in a concurring memorandum; Judge Meyer dissents and votes to reverse in a separate opinion in which Judge Jones concurs; Judge Fuchsberg dissents and votes to reverse in another dissenting opinion.
Order affirmed.

 (US Const, 6th, 14th Amdts [see Taylor v Louisiana, 419 US 522].)